**RECORD NO. 13-4868**

# IN THE
# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

───────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

STEVEN LAVONNE MORRIS,

*Defendant-Appellant.*

───────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NEWPORT NEWS

───────────

**OPENING BRIEF OF APPELLANT
STEVEN LAVONNE MORRIS**

───────────

Edwin F. Brooks
EDWIN F. BROOKS, LLC
Six West Broad Street
Richmond, Virginia 23220
Telephone: (804) 648-1448
brooks@efbrooks.com

*Counsel for Appellant*

**LANTAGNE LEGAL PRINTING** 801 East Main Street Suite 100 Richmond, Virginia 23219 (804) 644-0477
**A Division of Lantagne Duplicating Services**

# <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................... ii

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE .................................................................1

STATEMENT OF THE FACTS ...............................................................4

SUMMARY OF ARGUMENT ................................................................6

STANDARD OF REVIEW .....................................................................6

ARGUMENT ..........................................................................................7

    I.     THE DISTRICT COURT ERRED IN RULING THAT MR.
         MORRIS WAS A CAREER OFFENDER ................................................7

CONCLUSION ........................................................................................13

REQUEST FOR ORAL ARGUMENT ....................................................13

CERTIFICATE OF COMPLIANCE........................................................14

CERTIFICATE OF SERVICE ................................................................15

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States*,
   552 U.S. 38 (2007).........................................................................................7

*Morris v. United States*,
   130 S. Ct. 1265 (2010)..................................................................................9

*Taylor v. United States*,
   495 U.S. 575, 110 S. Ct. 2143, 109 L. Ed. 2d 607 (1990) ....................9, 10, 11

*United States v. Booker*,
   543 U.S. 220, 125 S. Ct. 738 (2005) ..........................................................6

*United States v. Carter*,
   564 F.3d 325 (4th Cir. 2009) ......................................................................7

*United States v. Daughtery*,
   874 F.2d 213 (4th Cir. 1989) ......................................................................6

*United States v. Lynn*,
   592 F.3d 572 (4th Cir. 2010) ......................................................................7

*United States v. Mendoza-Mendoza*,
   597 F.3d 212 (4th Cir. 2010) ......................................................................7

*United States v. Pauley*,
   511 F.3d 468 (4th Cir. 2007) ......................................................................6

*United States v. Peterson*,
   629 F.3d 432 (4th Cir. 2011) ..............................................................9, 10, 11

*United States v. Seay*,
   553 F.3d 732 (4th Cir.2009) ........................................................................9

# STATUTES

18 U.S.C. § 16(a) ...............................................................................9

18 U.S.C. § 3231 ...............................................................................1

18 U.S.C. § 3553(a) ...........................................................................7

18 U.S.C. § 3742 ...............................................................................1

21 U.S.C. §841(a)(1) .........................................................................1

21 U.S.C. §841 (b)(1)(A)(ii) ..............................................................1

21 U.S.C. §841(b)(1)(A)(iii) ..............................................................1

21 U.S.C. § 846 .................................................................................1

28 U.S.C. § 1291 ...............................................................................1


Va. Code § 18.2-47 ..........................................................................12


U.S.S.G. § 4B1.1(a) ..........................................................................8

U.S.S.G. § 4B1.2 ..........................................................................9, 12

U.S.S.G. § 4B1.2(a) ..........................................................................8

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231. The Judgment of conviction and sentence was filed on November 14, 2013, and the Notice of Appeal filed by Mr. Morris on November 15, 2013, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

Did the District Court err in ruling that Mr. Morris is a Career Offender and in sentencing him as a Career Offender?

## STATEMENT OF THE CASE

On March 11, 2013, a grand jury sitting in the Eastern District of Virginia, Newport News Division, returned a two count Indictment (the "Indictment") against 13 defendants including the appellant Steven L. Morris. Count one alleges that from January 2012 up until the date of the indictment, all 13 defendants conspired to distribute five kilograms or more of cocaine hydrochloride, as well as conspiring to distribute more than 280 grams of cocaine base ("crack"), all in violation of 21 U.S.C. § 846, 21 U.S.C. §841(a)(1), 21 U.S.C. §841 (b)(1)(A)(ii) and 21 U.S.C. §841(b)(1)(A)(iii). According to the indictment, Mr. Morris was the leader of the organization and he allegedly made large scale purchases of narcotics in New York and other places in furtherance of the conspiracy. The indictment also

1

contained a forfeiture allegation seeking a money judgment of $1,200,000,0 0 against all the defendants, the forfeiture of $87,918.00 from Mr. Morris, and other sums from other defendants as well as a 2002 Chevrolet Tahoe sports utility vehicle registered to co-defendant James Vincent Taylor. J.A. at 8-19[1]. After his arrest, On April 1, 2013, Mr. Morris had a detention hearing, wherein Mr. Morris was detained by the Magistrate Judge after the hearing.  J.A. at 3.

On June 5, 2013, Mr. Morris pleaded guilty to Count I of the indictment by entering into a Plea Agreement wherein he waived his right to appeal.  J.A. at 20-56.  During the guilty plea hearing, the Magistrate Judge conducting that hearing reviewed the terms of the Plea Agreement with Mr. Morris, including the appellate waiver. J.A. at 35, 46-47.  The Plea Agreement was accompanied by a Statement of Facts. J.A. at 56-70. At the conclusion of the Plea hearing, both the Plea Agreement and the Statement of Facts were accepted. J.A. at 30, 40.

Upon receiving the Presentence Report in this case, defense counsel learned that Mr. Morris was classified by the United States Probation Officers as a Career Offender.  Mr. Morris' base offense level was also enhanced by virtue of him being identified as an organizer or leader. Neither that designation nor the drug weight associated with this case as relevant conduct was contested (J.A. at 143),

---

[1] References to the Joint Appendix submitted in this matter are referred to as "J.A." followed by the page reference.

2

and neither is an issue in this appeal. Mr. Morris was deemed a Career Offender in part by a conviction for attempted abduction.   On October 23, 2013, in his Statement of Position Regarding Sentencing Factors, counsel did not object to Mr. Morris' Career Offender classification, but did request a downward variance to 240 months imprisonment.   J.A. at 87-92.   The Government's Statement of Position, filed on October 22, 2013, does not refer to an unresolved Career Offender objection either. J.A. at 78-86.   Mr. Morris' sentencing hearing was scheduled for October 30, 2013. Based on letters written by Mr. Morris to the District Court[2], The District Court continued sentencing until November 12, 2013 so that the parties could address the Career Offender issue, which Mr. Morris clearly addressed in his letters to the Court. Mr. Morris also explained his objection to being adjudicated a Career Offender to the Court, and not his counsel who, to that point, had raised no such objection. In fact, counsel allowed Mr. Morris to argue the point, which is highly unusual to say the least. J.A at 118-136 . The Court did not rule on the objection at that time. At sentencing, the Court overruled the objection to Mr. Morris's classification as a Career Offender (J.A. at 149-150), and sentenced him to 294 months imprisonment, below the low end of the Career Offender range, meaning that the District Court granted the defense request for a

---

[2]The letters written to the District Court by Mr. Morris were not posted on the CM/ECF system, so they are not part of the Joint Appendix in this case.

3

downward variance in part.  J.A. at 183. The District Court entered its Judgment on

November 14, 2013, and Mr. Morris, though counsel, filed a Notice of Appeal on

November 15, 2013.  J.A. 201-208. Thereafter, on November 25, 2013, Mr. Morris

filed a *pro se* Notice of Appeal, and request for new counsel. Two of the issues Mr.

Morris mentioned in his *pro se* Notice of Appeal were either abandoned or never

pursued in the District Court.

## STATEMENT OF FACTS

At some point in 2012, law enforcement in the Newport News/Hampton area

("the Peninsula") became aware of the existence of two drug trafficking

organizations in their area. On January 14, 2013 Federal and state agents obtained

federal warrants to intercept telephone communications for Christopher Barrett,

another leader of the other drug trafficking organization in the Peninsula. On

February 8, 2013, the agents obtained a telephone intercept warrant for a cellular

telephone that was one used by Mr. Morris. (J.A. at 57-58, 61). The agents

intercepted numerous conversations that made it clear that Mr. Morris was going to

New York, New York and Atlanta, Georgia to procure large quantities of cocaine.

He had women drive him to New York and Atlanta to procure large quantities of

drugs which were then distributed to mid-level dealers in the Newport

News/Hampton area.   Large amounts of money were also taken to the out of state

sources of supply to pay for the quantities of cocaine procured. He spent a lot of

4

time speaking with Mr. Barrett and other conspirators about the availability and price of drugs, and his attempts to procure drugs for redistribution in the Peninsula. J.A. at 58-61. The agents spent a lot of time between February 9-23, 2013 tracking the movement and conversations of members of the conspiracy, including but not limited to Mr. Morris. In fact, two of the sources of supply in New York were ultimately charged and convicted as part of the same conspiracy. J.A. at 8-17, 61-67.

The conspiracy came to a head on February 23, 2013. After a February 22, 2013 traffic stop of co-conspirator Bradley Cephas, he was arrested and cooperated with the authorities. Mr. Morris learned the next day that Mr. Cephas had been arrested, and went to Cephas' home to recover contraband, and he encountered police officers. Shortly thereafter, a search warrant executed at Cephas' home, and drugs and money were recovered. J.A. at 66-67. The agents continued to monitor Mr. Morris' calls, and learned that he was going to meet co-conspirators Edwin Fernandez and Jonathan Holguin at a commercial bus stop. Mr. Morris and Holguin were arrested at the bus station and a kilogram of cocaine powder. After Mr. Morris was arrested, agents executed a search warrant at his address. During that search, the agents seized cocaine powder, and $87,918 in cash from a safe. J.A. at 67-68.

After everyone was arrested, some of Mr. Morris' co-defendants, most particularly his out of state sources of supply cooperated with the Government and provided more information regarding Mr. Morris' involvement in the drug trafficking organization, and the fact that he procured large quantities of drugs for distribution on the Virginia Peninsula.  J.A. at 68-69. However, none of the evidence showed that Mr. Morris was actively engaged in street level distribution himself, rather other defendants were engaged in that aspect of the operation.

## SUMMARY OF ARGUMENT

Mr. Morris is not a career offender in any event since his conviction for attempted abduction was erroneously determined by the District Court to be a qualifying conviction for career offender purposes.

## STANDARD OF REVIEW

A trial court's factual determinations at sentencing are reviewed for clear error; purely legal interpretations of the Sentencing Guidelines are reviewed *de novo. United States v. Daughtery*, 874 F.2d 213, 217 (4th Cir. 1989).  Sentencing decisions are reviewed by an appellate Court for reasonableness. *United States v. Pauley,* 511 F.3d 468, 473 (4th Cir. 2007); *citing United States v. Booker*, 543 U.S. 220, 260-62, 125 S.Ct. 738 (2005). Appellate review of a district court's

imposition of a sentence, "whether inside, just outside, or significantly outside the Guidelines range," is for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 41 (2007). This review requires consideration of both the procedural and substantive reasonableness of a sentence. *Id*. at 51. "Procedural reasonableness evaluates the method used to determine a defendant's sentence." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010). This court must assess whether the district court properly calculated the advisory Guidelines range, considered the 18 U.S.C. § 3553(a) factors, analyzed any arguments presented by the parties, and sufficiently explained the selected sentence. *Gall*, 552 U.S. at 49-50; *see also United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010) ("[A]n individualized explanation must accompany every sentence."); *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009). "Substantive reasonableness examines the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *Mendoza-Mendoza*, 597 F.3d at 216.

## **ARGUMENT**

I.    THE DISTRICT COURT ERRED IN RULING THAT
      MR. MORRIS WAS A CAREER OFFENDER.
Pursuant to §4B1.1(a)  of the United States Sentencing Guidelines ("U.S.S.G."), a career offender is defined as a defendant (1) who is "at least

7

eighteen years old at the time the defendant committed the instant offense of conviction"; (2) whose instant offense is "a felony that is either a crime of violence or a controlled substance offense"; and (3) who "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (emphasis added). The term "crime of violence" is, in turn, defined in § 4B1.2(a) as follows: The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or; (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Application Note 1 to § 4B1.2(a) explains: "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth ( i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.    The Fourth Circuit has

8

repeatedly found there to be no inconsistency between U.S.S.G. § 4B1.2 and its commentary, thus meaning that the commentary is binding on the Court. See *United States v. Seay*, 553 F.3d 732, 737 (4th Cir.2009); *United States v. Peterson*, 629 F.3d 432, 435 (4th Cir. 2011). The meaning of "physical force" in 18 U.S.C. § 16(a) is a question of federal rather than state law, and "in answering that question [of federal law] we are not bound by a state court's interpretation of a similar-or even identical-statute." *Morris v. United States,* 130 S. Ct. 1265, 1269-70 (2010).

Courts employ a categorical approach in determining whether a prior conviction will lead to a sentence enhancement under the Sentencing Guidelines. *Seay*, 553 F.3d at 737 ("In determining whether a conviction qualifies as a crime of violence under the Sentencing Guidelines, we use the 'categorical approach' "); See Also, *Taylor v. United States*, 495 U.S. 575, 588, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ("[T]he enhancement provision always has embodied a categorical approach to the designation of predicate offenses"). As described in *Taylor*, the categorical approach involves two steps. First, a court must distill a "generic" definition of the predicate offense based on how the offense is defined "in the criminal codes of most states." *Taylor*, 495 U.S. at 598, 110 S.Ct. 2143. The *Taylor* Court borrowed the "generic," "contemporary," and "modern" definition of burglary from the Model Penal Code and a modern criminal law textbook, which provided similar definitions. See *Id*. and footnote 8. Pointing out the necessity of

9

distilling the generic crime of burglary, the Court rejected simply applying a single State's form of burglary. It explained that any definition of a predicate offense that would be determined by a single State's criminal law could result in unacceptable differences in applying federal law in sentencing defendants. *Id*. at 590-91, 110 S.Ct. 2143. "That would mean that a person convicted of unlawful possession of a firearm would, or would not [through an enhancement based on a single State's definition of burglary], receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.'" *Id*.

Second, after finding the generic form of the predicate offense, a court must determine whether the defendant's prior conviction constituted a conviction of the generic offense. That determination is made categorically, not by comparing the defendant's prior conduct with the generic offense, but rather by comparing the elements of the crime of conviction with the generic offense. As the *Taylor* Court admonished, the court must "look only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor*, 495 U.S. at 600, 110 S.Ct. 2143. *United States v. Peterson*, 629 F.3d 432, 435-436 (4th Cir. 2011); (Involuntary manslaughter conviction under North Carolina state law found *not* to be a "crime of violence" for career offender purposes).

10

The categorical approach applied in this way achieves uniformity in enforcement of federal sentencing enhancements and avoids retrials of prior convictions, which would effectively result from delving into the conduct underlying a prior conviction rather than looking to the elements of the offense of the prior conviction. However, the District Court violated both the holding in *Taylor* and *Peterson* when it allowed the Government to delve into the facts of the assault conviction at issue, and trial counsel for the defendant was constitutionally deficient for not repeatedly objecting to this procedure. Although the downward variance was argued, most of the argument in support of this objection was supplied by Mr. Morris himself. Mr. Morris was not aware of this aspect of Career Offender law, and was in no position to do anything about it. Worse yet, trial counsel neither cited nor argued *Peterson* in any pleading, when doing so would have conclusively established that the Government's argument in the District Court was essentially rejected by the Fourth Circuit in *Peterson*.  In fact, trial counsel's brief in support of the objection essentially relied upon the research Mr. Morris conducted. The attempted abduction should not have counted as a predicate offense due to the fact that no criminal history points were scored for it, although, concededly, criminal history points were assessed to a "related" assault charge that was finalized in a different Court ten months before the attempted abduction case was finalized by suspended sentence.

11

Concededly, the offense of attempted abduction does meet the definition of "crime of violence" set forth in U.S.S.G. §4B1.2 because it requires as an element of the offense any "use, attempted use, or threatened use of physical force against the person of another" to be accomplished. *See*, e.g. §18.2-47 of the Code of Virginia (1950), as amended. Unfortunately, it appears that the statement contained within the United States Sentencing Commission Sentencing Primer that was relied upon by Mr. Morris and counsel in the District Court is not supported by Fourth Circuit case law. In this case, the Attempted Abduction was not assigned any criminal history points because a related case decided on a different date, but with no intervening arrest, was assigned two criminal history points. In this case, it is apparent that the timing of Mr. Morris' plea, and his decision to enter into a cooperating plea agreement ended up hurting his position in Court. Based on the fact that he did not enter a guilty plea until after co-defendants pled guilty and began cooperating, the drug weight associated with Mr. Morris increased after his co-conspirators began cooperating with the Government. Second, Mr. Morris should never have entered into a cooperating Plea Agreement if he did not understand what was expected of a cooperating witness. It is clear from the sentencing transcript that Mr. Morris did not understand what the expectations were, and he should never have spoken to agents if he was not able to have free

12

discussions with them unrestrained by any feelings of loyalty towards his former confederates.

## **CONCLUSION**

For the reasons stated above, this Court should vacate Mr. Morris's case and remand the case to the United States District Court for re-sentencing within the range that would have been applicable had Mr. Morris not been adjudicated a Career Offender.

Respectfully submitted;
STEVEN L. MORRIS

By _____
                                    Of Counsel

/s/ Edwin F. Brooks
VSB #33711
EDWIN F. BROOKS, LLC
Six West Broad Street
Richmond, VA 23220
(804) 648-1448
(804) 648-8001 facsimile
Counsel for Appellant, Steven L. Morris

## **REQUEST FOR ORAL ARGUMENT**

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief of the appellant has been prepared using Microsoft Word software, Times New Roman font, 14 point proportional type size.

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of authorities; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains  2,975 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief and/or a copy of the word or line print-out.

<u>/s/ Edwin F. Brooks</u>
Edwin F. Brooks, Esq.
Counsel for Appellant, Steven L. Morris

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of  February, 2014, I electronically filed the foregoing Opening Brief with the Clerk of the United States Court of Appeals for the Fourth Circuit using the CM/ECF system, which will automatically send a notification of such filing (NEF) to the following counsel:

Howard Zlotnick, Esquire
Managing Assistant U.S. Attorney,
Office of the U.S. Attorney
721 Lakefront Commons, Suite 300
Newport News, Virginia  23606

                                 /s/
                                Edwin F. Brooks
                                Attorney at Law
                                Six West Broad Street
                                Richmond, Virginia 23220
                                (804) 648-1448 - telephone
                                (804) 648-8001 – facsimile
                                brooks@efbrooks.com
                                VSB # 33711